## KINNICK BROS. v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y Co.

| 69 | 665 |
|----|-----|
| 92 | 345 |

| 69 | 665 |
|----|-----|
| 104 | 663 |

| 69 | 665 |
|----|-----|
| 130 | 618 |

| 69 | 665 |
|----|-----|
| f141 | 138 |

| 69 | 665 |
|----|-----|
| 144 | 345 |
| 144 | 340 |

1. **Railroads:** CARRIERS OF LIVE STOCK: DILIGENCE REQUIRED: EVIDENCE. Where a carrier is delayed in delivering live stock to market, it may excuse the *delay* by proof of misfortune or accident, although not inevitable or produced by the act of God. But evidence of such accident and delay is not admissible to excuse the delivery of the stock in *bad order*, unless there is offered with it evidence to prove that it used the highest degree of care during the delay for the preservation and safety of the animals.

2. ———: ———: ———: INJURY TO ANIMALS FROM NATURAL PROPENSITIES. Where the cause of damage to live stock for which recompense is sought from a carrier is connected with the character or propensities of the animals undertaken to be carried, the ordinary responsibility of the carrier does not attach; (*McCoy v. Keokuk & Des M. R'y Co.*, 44 Iowa, 424;) but where it is shown that such propensities are active only while the car in which the animals are carried is standing still, and it appears that the damage in question occurred on account of unusual delay, caused by accident, and that the damage might have b en avoided by unloading the animals, or by giving them personal attention, during the delay, *held* that the rule exempting the carrier did not apply.

3. ———: ———: ———: CARS OVERLOADED. Where a railroad company receives for shipment a car of hogs which is overloaded, it assumes all the responsibilities of a common carrier with reference to it, and cannot escape liability for damage to the property on the ground that the car was overloaded.

*Appeal from Davis District Court.*

SATURDAY, OCTOBER, 23.

PLAINTIFF delivered a car-load of hogs to defendant at Drakeville, in this state, for transportation to the Union stock-yards at Chicago. A passenger train on defendant's road was thrown from the track near Ottawa, Illinois, and the obstruction caused by the accident delayed the train on which the plaintiff's hogs were shipped for about twelve hours. When the train arrived at Chicago, eighteen of the hogs were dead, and others were so injured as to depreciate their value in market. Plaintiff brought this action to recover the damages occasioned by the injury, alleging that defendant had violated its undertaking as a common carrier to deliver the hogs in Chicago within a reasonable time and and in good order; also, that the injury was caused by defendant's negligence. The defendant in its answer denied that the delay in delivering the hogs in Chicago was caused by any negligence on its part, and averred that the train was delayed by unavoidable accident; and averred that the hogs were loaded on the car by plaintiffs; that they had full charge of the work of loading them; that, without defendant's knowledge or consent, they overloaded the car; and that the injury to the hogs while being transported was occasioned by such overloading. The verdict and judgment were for plaintiffs, a motion for a new trial being denied. Defendant appealed.

*T. S. Wright, S. S. Carruthers* and *M. A. Low,* for appellant.

*Payne & Eichelberger,* for appellees.

REED, J.—I. Defendant offered evidence on the trial to prove that the wreck which obstructed the track, and delayed the train on which the hogs were being transported, occurred without fault on its part, and that it caused the track to be cleared and sent the train forward as soon after the accident as practicable; but the evidence was excluded by the court on the plaintiff's objection.  Defendant sought to prove these facts in excuse of the delay in delivering the hogs at Chicago. There was no express undertaking by the defendant to transport the property to its destination within any specified time.  The law, however, implies an undertaking by it to deliver it there within a reasonable time.  But, with reference to the time to be occupied in transporting the property, the carrier is not held to the extraordinary liability to which he is held for its safety while it is in his custody, and he may excuse delay in its delivery by proof of misfortune or accident, although not inevitable or produced by act of God; (Hutch. Carr., § 330; *Parsons v. Hardy*, 14 Wend., 215;) so that, if plaintiffs had sought to recover merely on the ground that there was delay in the transportation of the property, there would be no doubt, perhaps, but defendant would have been entitled to show the facts which the excluded evidence would have tended to prove as an excuse for the delay. But that is not the substance of their complaint.

*Margin note: 1. RAILROADS: carrier of live stock: diligence required: evidence.*

It is true, they allege that there was delay, but they do not claim that they were damaged by the mere fact of the delay, and the ground upon which they seek to recover is that the property was in bad condition when it reached its destination.  It was not disputed that the property was in bad condition when it arrived in Chicago.  The burden was therefore on defendant to establish facts which would relieve it from liabilty because of its bad condition.  It was an insurer of the safety of the property while in its charge for transportion, and it was not released from that extraordinary liability for its care by the accident which caused the delay,

even though it offered an excuse for the delay. It was bound, notwithstanding the accident, to use the highest degree of care during the delay for the safety of the property. If the removal of the hogs from the car during the time was necessary for their protection from injury, and it was possible to remove them, defendant was bound to do so; and it was bound to give them whatever personal attention was necessary for their protection from injury during the time. But it did not offer to show that it had unloaded them from the cars, or that it was impossible to unload them, or that it was not necessary for their safety to unload them, or that the injury did not occur in consequence of its failure to give them such personal attention as was essential to their safety. But the extent of its offer was to show facts which tended merely to excuse the delay in their transportation. We are very clear that those facts do not afford an excuse for the bad condition of the property at the time of its delivery. The evidence was immaterial, and was rightly excluded.

II. It was shown on the trial that it is the disposition of hogs, when being transported on cars, to struggle to get near to the doors when the train is standing, if the weather is hot, and to crowd away from them if it is cold, and that in doing this they are apt to "pile up," and that when this occurs those beneath are liable to be smothered, unless they receive immediate attention. The court instructed the jury, in effect, that, when the defendant contracted to carry the hogs to their destination, the law imposed upon it the obligation to carry them in a proper manner, and deliver them in good condition, considering the ordinary perils of the road, and that, if it failed to deliver them in such condition, it was responsible in damages for such failure. The instruction holds that defendant was an insurer of the safety of the property, and that its liability extended to all injuries to the property during its transportation, except such as may have resulted from the ordinary perils of the road, such as the usual shrinkage in weight, and

2. ——: ——: injuries to animals from natural propensities.

such loss from death as would ordinarily occur on the trip with good care and management. Counsel for appellant contend that, as the cause of the injury in question was connected with the natural propensities and characteristics of the property, it was one against which the carrier is held not to be an insurer, and that the instruction is erroneous on that ground.

It was held, in effect, by this court in *McCoy v. Keokuk & D. M. R'y Co.*, 44 Iowa, 424, that, when the cause of damage for which recompense is sought is connected with the character or propensities of the animals undertaken to be carried, the ordinary responsibility of the carrier does not attach. The reasons for the exception to the general rule as to the liability of the carrier, which arises when he undertakes to transport live-stock, are very apparent. There are dangers incident to the transportation of that character of property which are created entirely by the disposition and propensities of the animals, and against which it is often impossible for the carrier to make adequate provision. But the rule of the common law is modified only so far as is rendered necessary by the character of the property in this respect. In every other respect the carrier is held to be an insurer of the property.

In our opinion, the present case is not within the exception to the rule. The injury was caused by the "piling up" of the hogs while struggling to get near to or away from the doors of car. The propensity, however, was to do this only when the train was standing. Owing to the obstruction of the track, it was kept standing at a station for twelve hours, and, without doubt, it was during that time that the injury occurred. But the danger was not one against which provision could not be made. The injury might have been prevented either by unloading the hogs or giving them personal attention while in the car. There is no claim that this could not have been done, and we think defendant was bound to do it. As there was nothing shown which tended to take the

case out of the general rule, the court was right in instructing that defendant was bound by that rule.

III.   Plaintiffs loaded the hogs onto the car without assistance or direction from defendant's agents or employes. 3. ——: ——: Defendant claimed that the car was overloaded, ——: cars overloaded. and that the injury was caused by such overloading. The court instructed the jury that, if defendant had knowledge of the number of hogs in the car, and of the condition of the car as to the loading when it received it, or if it might have known these facts, it could not escape liability for the damage on the ground that the car was overloaded. Exception is taken to this instruction. But we think it is correct. It is not claimed that there was any deceit or misrepresentation by plaintiff as to the condition of the car or to its loading. Defendant's agent, who made the contract for it, went to the car after the loading was done and closed and sealed it. There was nothing to prevent him from seeing the manner in which it was loaded. As defendant received the property under these circumstances, and undertook to transport it to its destination, it should be held to have assumed all the liabilities of a common carrier with reference to it.

The judgment of the district court will be

AFFIRMED.