WILLIAM WILKE v. ILLINOIS CENTRAL RAILROAD COMPANY,
Appellant.

**Carriers:** INJURY TO LIVE STOCK: BURDEN OF PROOF. Where an agent of the shipper of live stock accompanied the same for a portion of its transportation, and during that time it was claimed the stock was injured by exposure to heat, in seeking to recover· damages for the injury the shipper had the burden of proving that the exposure of the stock was the result of the defendant's negligence and not that of his agent.

**Same:** REASONABLE CARE. A carrier of live .stock unaccompanied by the owner or his agent is only held to an exercise of reasonable care to avoid injury to the stock.

**Same:** BURDEN OF PROOF: INSTRUCTIONS. An instruction in an action for injury to live stock while in transit that the shipper has the burden of showing his freedom from negligence, will not give the carrier the benefit of the rule imposing on the shipper whose agent accompanies the stock, the burden of proving that the injury was the result of the carrier's negligence.

**Same.** Where the jury failed to agree on a verdict for plaintiff until after the court had given an additional instruction on the desirability of agreeing, if practicable, errors in the instructions as to the burden of proof and degree of care required of the defendant were prejudicial.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

MONDAY, DECEMBER 18,. 1911.

ACTION to recover damages for loss of hogs due to heat occurring while the animals were being transported on the defendant railroad. There was a verdict for the plaintiff, and from judgment on this verdict the defendant appeals.—*Reversed.*

*Wesley Martin* and *Kelleher & O'Connor,* for appellant.

*J. W. Lee* and *D. C. Chase,* for appellee.

McCLAIN, J.—Plaintiff shipped two car loads of hogs over defendant's road, one from Webster City, and the other from Wilke, to Chicago, the two cars being contained in the same train; and, when the cars reached their destination, some of the hogs were found to have died, according to plaintiff's allegations, as the result of excessive heat. The specific charges of negligence on which plaintiff asked to recover damages for his loss were that during transit, the day being very hot, the defendant left the train containing these two cars of hogs standing for several hours near Cedar Falls in a deep cut, where no breeze could reach them, and that notwithstanding notification from plaintiff that the animals were suffering from heat, and the request of plaintiff to defendant to move its train out of said cut to some place where the breeze could reach the animals so as to prevent injury to them from the excessive heat, defendant neglected and refused to move said train or to protect said stock or to furnish any relief for a long time thereafter, and that the injury resulting, could have been prevented by the exercise of ordinary care on defendant's part, and was not due to any negligence or carelessness on the part of the plaintiff. The defendant denied the allegations of negligence. Plaintiff then amended his petition by alleging that plaintiff delivered to defendant, the hogs referred to, in good, sound, healthy condition, and that, when the cars containing the animals arrived at their destination, a certain number of the hogs were dead, and those not dead were greatly shrunk in weight, and were sick and in bad condition, and that the death and unusual shrinkage and sickness referred to occurred while the hogs were in defendant's care and being

transported. To this amendment the defendant answered,
denying the allegations, and alleging contributory negli-
gence of plaintiff in loading and handling the animals
while in charge of them during transportation, and that
any loss occurring resulted from such contributory negli-
gence, and from the sudden and unexpected rise in tem-
perature and excessive heat. By way of reply the plain-
tiff denied the affirmative allegations in defendant's answer
as amended.

During the introduction of the evidence, and in con-
nection with the testimony of one Lloyd Bickford, who said
that he accompanied the stock as the agent of plaintiff
until the train reached Waterloo, which is east of Cedar
Falls on defendant's line of road, where he got off the train
in which the hogs were being transported, to eat dinner,
and there missed the train on which the hogs were carried
from Waterloo to Chicago, taking another train for that
destination. The contract of shipment between plaintiff
and defendant, signed also by the witness as the person in
charge of and accompanying the stock, was offered in evi-
dence, describing the car of hogs shipped from Webster
City; and another contract in the same form, but signed
by another person as the person accompanying the hogs,
relating to the car load shipped from Wilke, was also intro-
duced. In these contracts it was provided that the cars
were to be in charge of the shipper or his agents while in
transit, that the shipper assumed the duty of loading and
unloading, and that the defendant company would not be
liable for any loss or damage to the stock caused by heat
or suffocation or for any loss or damage, however caused,
nor resulting from gross negligence of defendant, and, fur-
ther, that the shipper would at all times take care of the
stock at his own expense and risk, free transportation being
given to the shipper or his *bona fide* employee in charge of
the stock for that purpose. At the conclusion of the evi-
dence, defendant offered an amendment to its answer to

conform the pleadings to the evidence, alleging that the ship-
ment was made under the two contracts above referred to,
by the terms of which plaintiff agreed to take care of the
stock and give it the necessary care and attention while the
train was not in motion, and that he or his authorized em-
ployee would accompany the train for that purpose, and
that, by reason of such contract, plaintiff could not recover
on account of failure of defendant to water and care for the
stock or on account of any of the other matters referred
to in the contract as those which plaintiff agreed to per-
form.    The court refused to permit the filing of this
amendment on the ground that the defendant must have
had as much knowledge as the plaintiff in regard to the
existence of these contracts at the commencement of the
suit, and that the court had made rulings on the intro-
duction of evidence under the pleadings as they existed,
which would have been erroneous if the contracts had been
pleaded before the evidence was introduced.

The principal complaint on behalf of appellant is as
to the giving of instructions in which it was assumed that
the amendment to plaintiff's petition alleging that the hogs
were alive and in good, sound, healthy condition when de-
livered to defendant for shipment, and that, when they
arrived at their destination, some of them were dead, and
the others greatly shrunk in weight and sick and in bad
condition, such loss and damages occurring while the hogs
were in defendant's care during transportation, stated an
independent cause of action, with reference to which the
jurors were instructed that proof of the fact alleged by a
preponderance of the evidence would require a verdict in
favor of plaintiff unless the jury should "find that the
defendant has established, by a preponderance of the evi-
dence, its second defense, in which event your verdict
should be in favor of the defendant;" the second defense
being that the plaintiff was in charge of the stock during
shipment, and that any loss occurring during said shipment,

by reason of sudden rise in temperature and excessive heat, was chargeable to plaintiff, and, further, that such loss was due to the contributory negligence of plaintiff, and not to the negligence of the defendant. And, in this connection, the court further charged that the verdict should be in favor of the defendant if it had been shown by a preponderance of the evidence that with respect to the stock defendant "exercised the highest possible degree of foresight, pains, and care reasonably to be expected of it." In another instruction the jurors were told that, if plaintiff had proved that the stock "was in good condition when delivered to the carrier, but was in bad condition when it arrived at destination, the burden of proof is on the carrier to show by a preponderance of the evidence, in order to avoid liability, that it exercised with respect to said stock the highest possible degree of foresight, pains, and care reasonably to be expected of it."

In the case of *Colsch v. Chicago, M. & St. P. R. Co.,* 149 Iowa, 176, finally decided in this court after the trial of the present action in the lower court, it was held that for injuries resulting to live stock during transportation, by reason of changes in temperature, the common carrier is not liable as an insurer, but only for negligence; and that if the owner or his agent accompanies the stock, the burden is on him to show that negligence of defendant occasioned the injury, and that in such cases no presumption of negligence arises merely from proof of the fact of loss or damage, the shipper in charge of the stock during transit being presumed to know the cause of such loss or damage as well as the carrier. On the other hand, the rule is recognized in that case that, if the shipper or his agent does not accompany the stock in charge of it, the burden rests upon the carrier, which alone is presumed under such circumstances to have knowledge of the fact to prove by a preponderance of the evidence that the loss or damage did not result from any cause attributable to defendant's negli-

gence. The reasons for these rules are fully stated in that opinion, and need not be elaborated here. See *Mosteller v. Iowa Central R. Co.,* 133 N. W. (Iowa), 748, decided at present term. In view of these rules, we have no difficulty in reaching the conclusion that the instructions above referred to were erroneous to defendant's prejudice.

In the first place, it appears beyond question that the agent of the plaintiff did accompany the stock during at least a portion of the transportation for the purpose of caring for it, and that the only undue exposure to heat which the evidence tended to establish occurred during the time when the stock was accompanied by and in charge of defendant's said agent. To this extent at least the burden was on the plaintiff to show by a preponderance of the evidence that such exposure was the result of, or was contributed to by, defendant's negligence without the fault or neglect of the agent of plaintiff.

1. CARRIERS: injury to live stock: burden of proof.

In the second place, the instructions would have been erroneous even in the absence of any evidence that plaintiff or his agent accompanied the stock, in requiring defendant to show by a preponderance of the evidence that with respect to the stock, defendant exercised the highest possible degree of foresight, pains, and care reasonably to be expected of it. The measure of care required of the carrier to avoid injury to the stock in transport from changes in temperature is reasonable care, and not the highest possible degree of care. *Colsch v. Chicago, M. & St. P. R. Co., supra.*

2. SAME: reasonable care.

The trial court did not in any of its instructions refer specifically to the fact that plaintiff's agent accompanied the stock as having any bearing on the sufficiency of the evidence as to defendant's negligence. Something was said with reference to the burden of proof resting on plaintiff, under the issue raised by its original petition and the answer thereto relat-

3. SAME: burden of proof: instructions.

ing to the specific negligence charged in stopping the train
on a very hot day in a deep cut, and keeping the stock
in that situation for a long period of time, resulting, as
alleged, in loss of and damages to plaintiff's hogs, to show
by a preponderance of the evidence that plaintiff was him-
self free from any negligence contributing to such injury;
but this did not give to the defendant the full benefit to
which it was entitled under the issue raised under the
amendment to the petition of the fact that plaintiff's agent
did accompany the stock during the period of this specifi-
cally alleged negligent conduct of the defendant.   The court
seems to have assumed that without the amendment to its
answer offered by the defendant at the conclusion of the
evidence, which the court refused to entertain, relating to
the contract of shipment, there was nothing in the case to
render the fact that plaintiff's agent accompanied the stock
in any way material.   As will appear from an examina-
tion of the opinion in the *Colsch* case, *supra,* it is evident
that the fact was material not as affecting the degree of
care, but as affecting the burden with reference to proof
of defendant's negligence, and that for this purpose it is
the fact rather than the specific contract which is con-
trolling.   If, in fact, the shipper or his agent, with the
carrier's consent, accompanies the stock during transporta-
tion for the purpose of caring for it so far as practicable,
then the shipper is in as good a position as the carrier to
know what was the cause of the loss or injury, and whether
such loss or injury was the result of the carrier's negligence,
and the burden of proving the carrier's negligence therefore
remains in the nature of things with the plaintiff to show
that as to matters reasonably within his knowledge while
accompanying the stock the fault occasioning the injury
was not his but that of the carrier.   *Grieve v. Illinois
Central R. Co.,* 104 Iowa, 659; *Terre Haute, etc., R. Co.
v. Sherwood,* 132 Ind. 129   (31 N. E. 781, 17 L. R. A.
339, 32 Am. St. Rep. 239), and note; *St. Louis & S. F.*

*R. Co. v. Wells,* 81 Ark. 469  (99 S. W. 534); *Libby v. St. Louis, I. M. & S. R. Co.,* 137 Mo. App. 276  (117 S. W. 659); *Cleve v. Chicago, B. & Q. R. Co.,* 77 Neb. 166 (108 N. W. 982, 124 Am. St. Rep. 837); 15 Am. & Eng. Ann. Cas., 33, and note.

It appears from the record that the jurors were unable to agree for more than twenty-four hours after the case was submitted to them, and only reached a final

4. SAME.

agreement after the court had given an additional instruction as to the desirability of reaching a decision if practicable, by giving proper regard and deference each to the opinions of the others. No complaint is made of this instruction, but the fact that the court found it necessary to give such an instruction indicates that errors of the court in the instructions given with reference to the burden of proof and the highest possible degree of care may have had a very material bearing upon the action of the jury. We can not avoid the conclusion, therefore, that the errors pointed out may have been so far prejudicial as to require the reversal of the judgment.

Other alleged errors in the trial of the case are relied on for appellant, but, if the case is retried in accordance with the rules indicated in this opinion to be applicable to it, the errors complained of, if indeed in these other respects errors were committed, are not likely to occur and further discussion would be of no advantage.

The judgment must be *reversed.*