Public Utilities Commission,
No. 6336.

### A. A. VAUTIER
d.b.a. PELHAM TRANSPORT SERVICE

*v.*

STATE.

May 31, 1972.

*Smith, Welts & Currier (Mr. Philip R. Currier* orally) for plaintiff, A. A. Vautier d.b.a. Pelham Transport Service.

*Warren B. Rudman,* attorney general, and *Donald W. Stever, Jr.,* attorney (*Mr. Stever orally*), for New Hampshire Public Utilities Commission.

KENISON, C.J. The issue in this case is whether the

Public Utilities Commission's denial of Pelham Transport's application for a certificate to operate as an irregular route common carrier of passengers in charter-type service from seventeen southern New Hampshire cities and towns was clearly unreasonable or against the law. RSA 541:13. The plaintiff's appeal from the decision of the Public Utilities Commission was brought under RSA 541:6.

Pelham Transport presently has interstate authority for regular routes between Pelham, New Hampshire, and Lowell, Massachusetts, and for some incidental charter service and has intrastate authority for regular routes to Salem Depot and Nashua and for charter service originating in Pelham or Salem, New Hampshire. It has operated successfully under this authority since 1957; now it wishes to expand its intrastate authority to more closely coincide with its area of interstate authority. There was much evidence that Pelham Transport provides exemplary service: safe, courteous, punctual, economical, and that its customers support its application for expanded service. There was also evidence that there were other carriers providing service to the proposed area and that at least one might have to cut back its regular route service if there was increased charter competition. The Public Utilities Commission denied the application because it found some of Pelham Transport's operations were a "subterfuge" defeating the purpose of requiring an operating certificate and because it found "public convenience and necessity" did not justify the increased authority.

The determination of what general criteria must determine the commission's decision to grant or deny a certificate presents a question of law on review. *Roy* v. *Water Supply and Pollution Control Commission*, 112 N.H. 87, 289 A.2d 650 (1972). But the commission has broad discretion in the application of such general criteria. *Household Goods Carriers* v. *Ouellette*, 107 N.H. 199, 219 A.2d 699 (1966); 4 Davis, Administrative Law Treatise *s.* 30.11 (1958). Here the criteria are whether Pelham Transport is "fit, willing and able properly to perform the service" and whether the proposed service "is or will be required by . . . public convenience and necessity." RSA 376:5.

Pelham Transport argues that its service is not a subterfuge

designed to evade the purpose of certification, that the decision is inconsistent with past commission decisions, and that the decision misapplies the statutory criteria and goes against the weight of the evidence.

Pelham Transport construes its limited authority to originate in-state charter trips in Pelham to allow it to provide an in-state charter for a group from Nashua, if part of the group boards the bus in Pelham and the group pays "live mileage" from Pelham. It claims this is not the practical equivalent of originating a charter in Nashua, because if it had such authority its customers would not be subject to the inconvenience of sending part of their group to Pelham to board the bus and it would charge only for a bus garaged in Nashua or for "dead mileage" from Pelham, which is ten to fifteen cents per mile less than "live mileage." The commission found this practice a subterfuge which allows Pelham Transport to operate in excess of its authority, defeating the purpose of certification.

We would tend to agree that this is not the obvious violation of the law which would indicate a carrier is unfit. *See Ritter Trucking Co., Inc., Extension,* 111 I.C.C. (Motor Cases) 771 (1970); *Equipment Transport, Inc., Extension,* 111 I.C.C. (Motor Cases) 74, 85 (1970); *Public Utilities Comm'n* v. *Verl Harvey, Inc.,* 150 Colo. 158, 371 P.2d 452 (1962). However, the commission did not find Pelham Transport to be unfit, rather it regarded the questionable service to be one of several considerations leading to its decision that the public convenience and necessity did not justify granting the expanded authority. *See* Chandler, Convenience and Necessity: Motor Carrier Licensing By The Interstate Commerce Commission, 28 Ohio St. L.J. 379, 401 (1967). Whether the service is questionable is a matter particularly suited to commission expertise and we cannot say that the matter is irrelevant in determining the public's interest in the application. 1 Watkins, Shippers and Carriers 549-60 (5th ed. 1962).

We do not find this decision to be inconsistent with past commission policy. *See Kenneth Hudson, Inc.,* 44 N.H.P.U.C. 259 (1962); *Victor Corno,* 44 N.H.P.U.C 357 (1962). That the commission may emphasize different factors from case to case is attributable to the infinite variety of fact situations,

rather than to arbitrariness. The law has never bound commission discretion by a rigid adherence to stare decisis. Annot., Applicability of Stare Decisis Doctrine to Decisions of Administrative Agencies, 79 A.L.R.2d 1126 (1961); 2 Davis, Administrative Law Treatise *s.* 17.07 (1958).

Pelham makes much of the commission's statement that the adequacy of service is "*the* important consideration," while this court in *Household Goods Carriers* v. *Ouellette,* 107 N.H. 199, 201, 219 A.2d 699, 700, said it is "*only one* of several factors to be considered." (Emphasis added). But this difference only indicates that the importance of the adequacy of existing service depends, and must depend, upon the particular facts of the case. Where, as here, there are a number of bus lines already serving the proposed area, the commission may find the adequacy of existing service to be a more important consideration than in other cases. Likewise, Pelham makes much of the commission's saying "the evidence is not of a convincing nature" as is required by the statute, while the statute does not require such a standard of proof. RSA 376:5. But we do not believe the commission is here referring to the technical legal issue of burden of proof; rather it is rightly observing that where there are several bus lines already serving the proposed area the evidence of public demand must be more convincing than were such not the case.

This case, with its variety of conflicting considerations, is an excellent example of why the prime responsibility for determining the public interest is with a specialized agency and not with the courts. Jaffe, Judicial Control of Administrative Action 569-75 (1965).

*Appeal dismissed.*

All concurred.