Public Utilities Commission
No. 6511

WASTE CONTROL SYSTEMS, INC.

v.

STATE OF NEW HAMPSHIRE & a.

January 31, 1974

*Stebbins & Bradley, Michael L. Slive* and *Daniel J. Connolly*
(*Mr. Slive* orally) and *Ronald Perkins,* president and treasurer
of Waste Control Systems, Inc., pro se orally, for the plaintiff.

*Warren B. Rudman,* attorney general, *Roger G. Burlingame,*
attorney (*Mr. Burlingame* orally), for the Public Utilities Com-
mission.

*McLane, Graf, Greene & Brown* and *Charles DeGrandpre* (*Mr.
DeGrandpre* orally) for the protestants, Refuse Carriers Divi-
sion of the Motor Transport Association of New Hampshire.

*Baker & Page* for Orvie Beauchene, filed no brief.

GRIFFITH, J. Pursuant to RSA 375-B:5 and RSA 375-B:7 (Supp. 1972), Waste Control Systems, Inc. sought from the public utilities commission a contract carrier permit and a common carrier certificate to operate as a motor carrier of refuse between the city of Lebanon and the towns of Hanover, Enfield, Canaan, Lyme, Orford, Plainfield and Cornish. After hearing, the commission granted the plaintiff a contract carrier permit for the city and towns requested limited to the "transportation of rubbish for which arrangements have been made for recycling only." Plaintiff's motion for rehearing was denied and it appealed to this court in accordance with the provisions of RSA 541:6 seeking review of the commission's order on its application for a contract carrier permit.

Waste Control Systems, Inc. is a Vermont corporation registered to do business in New Hampshire. Ronald Perkins, the president and treasurer of the corporation, is experienced in the field of solid waste disposal and the corporation has an avowed purpose of collecting separately recyclable waste for distribution to community recycling centers. The plaintiff corporation's evidence indicated that it is not economically feasible to handle only recyclable waste and that if it is to operate successfully it must introduce the recycling collection as part of a complete waste collection. In its appeal to this court plaintiff does not contest the denial of the common carrier application but argues that the evidence before the commission required a granting of an unlimited contract carrier permit.

Plaintiff recognizes that all findings of fact by the commission are prima facie lawful and the decision may not be set aside "except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13; *White Mountain Power Co. v. Maine Central Railroad,* 106 N.H. 443, 213 A.2d 805 (1965). The standard provided the commission by RSA 375-B:7 (Supp. 1972) for granting a permit to a contract carrier is that it will be in the "public interest."

Plaintiff argues first that there is a fatal deficiency in the commission findings in that there was no finding that it would

not be in the "public interest" to grant plaintiff a general contract carrier permit. It urges a remand of the case to the commission for either a negative or positive finding on this issue. The statute does not require the commission to grant a permit unless they find it not to be in the "public interest" but restricts the granting of a permit to cases where they find it "will be consistent with the public interest." RSA 375-B:7 (Supp. 1972). The commission in this case found the granting of a contract carrier permit for recyclable waste "consistent with the public interest." Implicit in this finding was a denial of a finding that it would be "consistent with the public interest" to grant the plaintiff a general contract carrier permit. *Household Goods Carriers v. Ouellette,* 107 N.H. 199, 219 A.2d 699 (1966). The absence of a specific negative finding is unimportant since the plaintiff requires a specific affirmative finding to entitle it to the general contract carrier permit.

Plaintiff argues that the evidence before the commission compelled an affirmative finding on this issue but a review of the evidence before the commission reveals no such compulsion. The commission found the plaintiff fit and able to perform the service of collecting recyclable waste and that this would be a laudable attempt that should be encouraged. However, the commission found no evidence that the rubbish collectors operating in the area were inadequate or unsatisfactory. It further found that the 1,050 customers plaintiff required would be obtained from customers presently served by existing rubbish collectors. There was testimony that the projected loss of customers to the existing collectors would result in their operating at a loss and force them out of business. There was meagre evidence of customer demand for recycling operations and some of the existing collectors indicated they were prepared to meet any such demand. The evidence did not require a finding that there was any demand for service in the towns in the area not now with rubbish collection, nor that the existing collectors were not adequate to meet any future demand. Such conflicts in evidence as appear are left to the discretion of the commission to resolve. *White Mountain Power Co. v. Maine Central Railroad,* 106 N.H. 443, 213 A.2d 805 (1965); *Ply-*

*mouth Fire District v. Water Pollution Comm'n,* 103 N.H. 169, 167 A.2d 677 (1961).

In order to attack the commission's denial of the authority sought, the plaintiff must produce evidence clearly showing a public interest in the approval of his petition such as a public need for the service it was to render. *Gilbertville Trucking Co. v. United States,* 371 U.S. 115, 129 (1962). The analogous phrase "'public good' has been given a broad definition by this court and has been held not only to include the needs of particular persons directly affected . . . but also . . . the needs of the public at large and the general welfare of the utility involved." *Boston & Maine R.R. v. State,* 102 N.H. 9, 10, 148 A.2d 652 (1959). In the application of the general criteria provided by the statute the commission has broad discretion and "[t]his case, with its variety of conflicting considerations, is an excellent example of why the prime responsibility for determining the public interest is with a specialized agency and not with the courts." *Vautier v. State,* 112 N.H. 193, 196, 291 A.2d 612, 614 (1972).

Plaintiff has urged us in oral argument to rule that rubbish collection was not within the jurisdiction of the commission. This question was not briefed and was first injected before the commission in plaintiff's motion for rehearing on the denial of its petition for a common carrier permit. Plaintiff asserts that neither Vermont nor the Interstate Commerce Commission exercises jurisdiction in this field *(see, e.g., Joray Trucking Corp. Common Carrier Application,* 99 M.C.C. 109 (1965)) and that the language in RSA 375-B:2 VII excludes rubbish carriers. This section defines a contract carrier as a "person engaged in the transportation of property for compensation . . . ." and it is argued rubbish is not property. We recognize there is some authority for the argument that rubbish may not qualify as "property" under the contract carrier definition in RSA 375-B:2 VII. *See Joray Trucking Corp. Common Carrier Application supra; Visco v. State,* 95 Ariz. 154, 388 P.2d 155 (1963). While the tardy appearance of this issue in the case might justify a refusal to consider it, in any event we are not disposed to question the commission's interpretation of the statute. The exercise of jurisdiction by the commis-

sion in this case was proper in the absence of a definite expression of legislative intent to the contrary. If the legislature desires to exempt transportation of rubbish and garbage, they clearly have that right to do so.

*Appeal dismissed.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting: In my view, the commission has no jurisdiction in this case and the plaintiff needs neither a permit nor a certificate to carry on its business. Both RSA 375-B:2 IV (Supp. 1972) defining a common carrier and RSA 375-B:2 VII (Supp. 1972) defining a contract carrier refer to persons transporting property between points in this State for compensation. If waste and garbage are not property within the meaning of the statute, then of course plaintiff is neither a common nor a contract carrier. Although there is authority both ways, it is my view that waste and garbage are not property for the purpose of commission jurisdiction. *Joray Trucking Corp. Common Carrier Application,* 99 M.C.C. 109 (1965); *Visco v. State,* 95 Ariz. 154, 388 P.2d 155 (1963); *Fairchild v. United Service Corporation,* 52 N.M. 289, 197 P.2d 875 (1948). Even if garbage is property, the commission still has no jurisdiction because the plaintiff is a private carrier specifically exempted by RSA 375-B:3 IV (Supp. 1972). A private carrier under the statute is one who is the owner, lessee or bailee of the property transported. If the person whose garbage is carried away were to expressly give or convey it to the plaintiff, there could be no question but that plaintiff would be a private carrier. But that is what is impliedly done. To the home owner, the garbage has a negative value and he impliedly relinquishes any interest therein to the collector and pays him to carry it away. The collector is then carrying his own property and is a private carrier exempt from the statute. *Joray Trucking Corp. Common Carrier Application supra.* Also, there is no requirement that the collector transport the garbage to any particular place. The homeowner doesn't care where the collector takes the garbage or what he does with it. This being so, the collector is not

engaged in transportation between particular points in the State and does not therefore meet the definition of either a common or contract carrier.